the place of trial, or that he is ancient or infirm, or is about to leave the United States, or to enter upon a sea voyage. In the present cause it is not shown that the party or parties who may be called upon to answer the interrogatories attached to the petition come within any of the exceptions named, and therefore the court is without authority to order the procurement of the desired testimony in any other mode than by the production of the witness in open court, as required by section 861 of the Revised Statutes. *The motion made must therefore be refused, and it is so ordered.

WOOLSON, J. I concur in the foregoing opinion and result reached therein.

---

*In re* SALOMON.

*(Circuit Court, S. D. New York. May 11, 1891.)*

CUSTOMS DUTIES—OLD RUBBER BOOTS AND SHOES.
   Rubber boots and shoes, worn out by use, and fit only for remanufacture, *held* to be dutiable at 10 per centum *ad valorem* as "rags" or "waste," under paragraphs 481 and 493 of Schedule N of the tariff act of March 3, 1883, and not dutiable at 25 per centum *ad valorem*, as "articles composed of india rubber," under paragraph 454 of said schedule.

At Law. Appeal from board of United States general appraisers.

F. Salomon, on August 23, 1890, imported by the Glenrath into the port of New York certain old india rubber boots and shoes, which were duly entered at the port of New York, and classified and assessed by the collector of customs at that port, at 25 per centum *ad valorem*, under Schedule N, par. 454, of the tariff act of March 3, 1883, as "articles composed of india rubber, not specially enumerated or provided for in this act." The importer protested, claiming that the said goods (1) were free of duty, under the free list of said act, (paragraph 724,) as "india rubber crude;" or (2) dutiable at only 10 per centum *ad valorem* as "rags, of whatever material composed, and not specially enumerated or provided for in this act," under Schedule N, par. 481; or (3) as dutiable at 10 per centum *ad valorem* as "waste, all not specially enumerated or provided for in this act," under Schedule N, par. 493, of said act. An appeal was taken by the importer from the decision of the collector to the board of United States general appraisers, under the provisions of the act of June 10, 1890. The board affirmed the decision of the collector, holding that the merchandise, consisting of manufactured india rubber, principally boots and shoes, along with scraps thereof, worn out by use, and fit only for remanufacture, were "articles," within the comprehensive meaning of that term as used in the tariff act, and, being composed of india rubber, were properly dutiable at 25 per centum *ad valorem*, under paragraph 454, Schedule N, of the tariff act of March 3,

1883. The importer applied for a review of the decision of said board by the United States circuit court.

*Curie, Smith & Mackie,* for importer.

*Edward Mitchell,* U. S. Atty., and *Henry C. Platt,* Asst. U. S. Atty., for collector.

LACOMBE, Circuit Judge. The decision of the appraisers is reversed, and the article is classified either as "rags," at 10 per cent., or as "waste," at 10 per cent.; under paragraphs 481 and 493 of the act of March 3, 1883.

---

## CELLULOID MANUF'G CO. *v.* READ.

*(Circuit Court, D. Connecticut. October 7, 1891.)*

**1. TRADE-MARKS—WHAT WILL BE PROTECTED.**
   The word "Celluloid," being a new and arbitrary word coined by plaintiff, and applied to goods of its manufacture, is a valid trade-mark, in the use of which plaintiff is entitled to be protected, though the term has become so generally known as to have been adopted by the public as the common appellative of the article to which it is applied.

**2. SAME—WHAT CONSTITUTES INFRINGEMENT.**
   But the use of the term by defendant as applied to an article of his manufacture, "Celluloid Starch," is not such as to induce the public to believe that the starch was connected with plaintiff or a product of its manufacture, and hence it is not an infringement of its trade-mark entitling plaintiff to an injunction.

**3. SAME—INJUNCTION.**
   The fact that a method might be devised by which plaintiff's article, "Celluloid," could be converted into a substitute for starch, and the possibility that it may in the future desire to make such an article, and put it on the market, are too remote to entitle it to an injunction against such use of the term by defendant.

In Equity.

*Rowland Cox,* for plaintiff.

*Henry G. Newton* and *Henry F. Hall,* for defendant.

SHIPMAN, J. This is a bill in equity for an injunction against the unlawful use of a trade-mark. The plaintiff was incorporated in 1871, by the name of the "Celluloid Manufacturing Company," for the manufacture and sale of "celluloid, or solid collodion, and its compounds, and articles made therefrom;" and ever since has existed under said name, has been constantly engaged in said manufacture, and has done an extensive business in producing a great variety of articles of use or ornament which contained, in whole or in part, the substance called "Celluloid." About the year 1870 the Messrs. Hyatt invented and patented a process for the conversion and manufacture of pyroxyline into a solid, to which, after the manufacture had developed and been materially improved, they gave the arbitrary or fanciful name "Celluloid," a name which has ever since been applied to the article, as manufactured by the plaintiff, which apparently succeeded to the trade-mark rights